UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RICKY L. CREEL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-12381** |
| **STATE OF LOUISIANA, WARDEN DARRELL VANNOY** | **SECTION "J"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

**I.   Factual and Procedural Background**

The petitioner, Ricky Creel ("Creel"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On April 12, 2013, Creel was charged by Bill of Information in Washington Parish with one count of aggravated second degree battery and one count of domestic abuse battery.[3] He entered a plea of not guilty on May 28, 2013.[4]

The record reflects that, on the evening of October 9, 2012, Creel and his wife, Samantha, had been "scuffling" at a home on Front Street in Bogalusa, Louisiana.[5] Kim Myers, who was

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 5.

[3] St. Rec. Vol. 1 of 5, Bill of Information, 4/12/13.

[4] St. Rec. Vol. 1 of 5, Minute Entry, 5/28/13.

[5] The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Creel*, No. 2014KA0680, 2014 WL 7332121, at *1 (La. App. 1st Cir. Dec. 23, 2014); St. Rec. Vol. 2 of 5, 1st Cir. Opinion, 2014-KA-0680, pp. 2-3, 12/23/14.

Creel's mother, tried to intervene between Creel and his wife. During Myers's second attempt to intervene, Creel was armed with a knife, and Myers's was severely cut in the face. Myers's boyfriend, Frankie Wheat, was present and immediately took her to the Bogalusa Medical Center. Myers suffered a severe laceration on the left side of her face from her chin area up to her left eye and into her hairline which left permanent scarring.

Before 10:00 p.m. that evening, officers from the Bogalusa Police Department were called to the home on Front Street and the emergency room at the Bogalusa Medical Center. Upon arrival at the residence, Lieutenant Patrick Lyons saw evidence that a scuffle had taken place in the backyard. He noted turned over aluminum chairs and other items on the ground. Creel, however, was no longer at the house and he could not be located.

At the hospital, the police interviewed Myers, Samantha Creel, and Wheat, all of whom gave consistent stories about the evening. The next day, the police officers obtained arrest warrants, and Creel eventually was arrested in March 2013.

On December 3 and 5, 2013, Creel simultaneously was tried before a jury for aggravated second degree battery (count one) and by the state trial judge for domestic abuse battery (count two), and found guilty on both counts.[6] Following trial, the Court sentenced Creel to serve six months in parish prison on count two.[7] On December 6, 2013, the State filed a multiple offender bill charging Creel as a fourth felony offender.[8]

---

[6]St. Rec. Vol. 1 of 5, Trial Minutes, 12/3/13; Trial Minutes, 12/5/13; Verdict Form, 12/5/13; St. Rec. Vol. 2 of 5, Trial Transcript, 12/3/13; Trial Transcript, 12/5/13.

[7]St. Rec. Vol. 1 of 5, Trial Minutes, 12/5/13; St. Rec. Vol. 2 of 5, Trial Transcript, 12/5/13.

[8]St. Rec. Vol. 1 of 5, Multiple Bill, 12/6/13.

At a January 13, 2014 hearing, the state trial court denied Creel's motions for new trial and post-verdict judgment of acquittal addressed to count one.⁹ After Creel waived legal delays, the state trial court sentenced him on count one to serve five years in prison at hard labor.¹⁰ The Court also denied Creel's motion to reconsider the sentence.¹¹ Creel sought review of this sentence and his related motions through supervisory writ application, which was denied by the Louisiana First Circuit on June 2, 2014.¹²

On August 25, 2014, the state trial court adjudicated Creel's as a fourth felony offender and sentenced him to serve life in prison without benefit of parole, probation, or suspension of sentence.¹³ However, on October 13, 2014, the state trial court granted Creel's motion for new trial on the multiple bill and resentenced him as a fourth offender to serve 20 years in prison without parole, probation, or suspension of sentence.¹⁴

On direct appeal, Creel's appointed counsel argued that the evidence at trial was insufficient to establish the element of specific intent to find Creel guilty of aggravated second degree battery.¹⁵ Creel apparently filed a *pro se* supplemental brief addressing the insufficient

---

⁹St. Rec. Vol. 1 of 5, Sentencing Minutes, 1/13/14; Motion for Post-Verdict Judgment of Acquittal, 12/6/13; Motion for New Trial, 12/6/13.

¹⁰St. Rec. Vol. 1 of 5, Sentencing Minutes, 1/13/14; Motion to Reconsider Sentence, 1/13/14; Trial Court Order, 1/13/14; St. Rec. Vol. 2 of 5, Sentencing Transcript, 1/13/14.

¹¹St. Rec. Vol. 1 of 5, Sentencing Minutes, 1/13/14; St. Rec. Vol. 2 of 5, Sentencing Transcript, 1/13/14.

¹²St. Rec. Vol. 1 of 5, 1st Cir. Order, 2014-KW-0361, 6/2/14; *see also* St. Rec. Vol. 1of 5, Motion to Modify and/or Amend Sentence, 5/3/14 (dated 4/30/14); Trial Court Order, 5/15/14; Notice of Intent, 3/13/14; Trial Court Order, 4/24/14; Motion to Correct an Illegal Sentence, 3/13/14; Trial Court Order, 3/24/14; Supervisory Writ of Review, 2/27/14; Trial Court Order, 3/3/14.

¹³St. Rec. Vol. 2 of 5, Multiple Bill Sentencing Minutes, 8/25/14.

¹⁴St. Rec. Vol. 2 of 5, Minute Entry, 10/13/14; Motion for New Trial on Multiple Bill, 9/2/14.

¹⁵St. Rec. Vol. 1 of 5, Appeal Brief, 2014-KA-0680, 6/10/14.

evidence claim and challenging the denial of his motion for new trial based on Myers's removal from the courtroom and disruptive behavior during the State's closing argument.[16]

On December 23, 2014, the Louisiana First Circuit affirmed the conviction finding the insufficient evidence claims meritless and finding that Creel's *pro se* claims were not asserted in the trial court or preserved for appeal.[17] The Court also noted the domestic abuse battery charge was improperly joined in the bill of information and at trial with the felony aggravated second degree battery charge.[18] The Court further held that because Creel did not file a motion to quash or object to the misjoinder, the error was waived under La. Code Crim. P. art. 495.[19] In addition, the Court found the misdemeanor conviction was not appealable because Creel did not assign any errors or raise any arguments addressing that conviction.[20]

The Louisiana Supreme Court denied Creel's related writ application without stated reasons on November 20, 2015.[21] Creel's convictions were final under federal law ninety (90) days later, on February 18, 2016, when he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the U.S. Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

---

[16]Creel's *pro se* supplemental arguments are referenced in the Louisiana First Circuit's opinion. *Creel*, 2014 WL 7332121, at *4; St. Rec. Vol. 2 of 5, 1st Cir. Opinion, 2014-KA-0680, pp. 7-8, 12/23/14.

[17]*Creel*, 2014 WL 7332121, at *1; St. Rec. Vol. 2 of 5, 1st Cir. Opinion, 2014-KA-0680, 12/23/14.

[18]*Creel*, 2014 WL 7332121, at *1 n.1; St. Rec. Vol. 2 of 5, 1st Cir. Opinion, 2014-KA-0680, p. 2 n.1, 12/23/14.

[19]*Id.*

[20]*Id.*

[21]*State v. Creel*, 180 So.3d 316 (La. 2015); St. Rec. Vol. 3 of 5, La. S. Ct. Order, 2015-KO-0151, 11/20/15; La. S. Ct. Writ Application, 15-KO-151, 1/22/15 (dated 1/14/15); St. Rec. Vol. 2 of 5, La. S. Ct. Letter, 2015-KO-151, 1/22/15.

In the meantime, on February 5, 2016, Creel submitted to the state trial court an application for post-conviction relief asserting the following grounds for relief:[22] (1) the state trial court denied his confrontation rights when Myers was removed from the courtroom in violation of *Brady* and the verdict would have been different based on a purported affidavit from Myers asserting that she cut herself by accident; (2) the state trial court lacked jurisdiction to sentence him as a multiple offender because the evidence was insufficient to prove the constitutionality of the predicate convictions; and (3) the cumulative errors committed by counsel amounted to ineffective assistance and establishes cause for failure to timely assert prosecutorial misconduct through misrepresentation of the evidence. Creel later supplemented his application to assert that he was prejudiced by the state trial court's instructions during voir dire and denied a fair trial based on unreasonable grand and petit jury panel selection processes in the Parish and State.[23]

On June 6, 2016, the state trial court denied relief finding the first, third and supplemental claims meritless and second claim procedurally defaulted and alternatively meritless.[24] Creel did not seek review of this ruling.

More than one year and three months later, on September 14, 2017, Creel submitted to the state trial court a second application for post-conviction relief asserting that he was denied the right to confront and cross-examine Myers as his accuser rather than a video recording of her statement to police.[25] On April 25, 2018, the state trial court denied relief finding the claim repetitive of arguments made in his first application and otherwise meritless.[26]

---

[22] St. Rec. Vol. 2 of 5, Application for Post-Conviction Relief, 2/13/16 (dated 2/5/16).

[23] St. Rec. Vol. 2 of 5, Supplemental Brief, 3/12/16 (dated 3/9/16).

[24] St. Rec. Vol. 2 of 5, Trial Court Judgment, 6/6/16.

[25] St. Rec. Vol. 2 of 5, Application for Post-Conviction Relief, 9/19/17 (dated 9/14/17).

[26] St. Rec. Vol. 2 of 5, Trial Court Judgment, 4/25/18.

On October 15, 2018, the Louisiana First Circuit Court summarily denied Creel's related writ application.[27] The Louisiana Supreme Court denied Creel's subsequent writ application on August 12, 2019, for seeking untimely relief under La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995).[28]

## II.   Federal Petition

On October 11, 2019, after correction of certain deficiencies, the clerk of this Court filed Creel's federal petition for habeas corpus relief.[29] In his petition, Creel asserts that he was denied the right to confront and cross-examine Myers, his mother and victim/accuser.[30]

The State filed a response in opposition asserting that Creel's federal petition should be dismissed as untimely filed.[31] In his reply to the State's response, Creel asserts that he is entitled to equitable tolling because the State courts denied his second application for post-conviction relief as untimely and on procedural grounds without giving him a chance to show cause for his default.[32]

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[33] applies to Creel's petition, which is deemed filed in this Court under the

---

[27] *State v. Creel*, No. 2018KW0864, 2018 WL 5013619, at *1 (La. App. 1st Cir. Oct. 15, 2018); St. Rec. Vol. 4 of 5, 1st Cir. Order, 2018-KW-0864, 10/15/18; 1st Cir. Writ Application, 2018-KW-0864, 6/22/18 (dated 6/11/18).

[28] *State v. Creel*, 279 So.3d 362 (La. 2019); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2018-KH-1950, 8/12/19; La. S. Ct. Writ Application, 18-KH-1950, 11/30/18 (dated 11/14/18; electronically filed 11/16/18); St. Rec. Vol. 2 of 5, La. S. Ct. Letter, 2018-KH-1950, 11/30/18.

[29] Rec. Doc. No. 5.

[30] *Id.*

[31] Rec. Doc. No. 13.

[32] Rec. Doc. No. 15.

[33] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law that date, does not specify

mailbox rule on August 29, 2019.[34] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts and the record shows that Creel's federal petition was not timely filed under the AEDPA. For the following reasons, the petition should be dismissed as time-barred.

## IV. <u>Statute of Limitations</u>

The AEDPA codified in 28 U.S.C. § 2244(d)(1)(A) requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[35] *Duncan v. Walker*, 533 U.S. 167,

---

an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[34]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court initially docketed Creel's deficient petition on August 29, 2019, when it was received. The corrected petition was filed October 11, 2019, and Creel was granted pauper status. The official stamp of the prison's Legal Programs Department reflects that the pleadings were received from Creel on August 29, 2019, for electronic mailing to the court.

[35]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

176-80 (2001). As stated above, Creel's conviction was final under federal law on February 18, 2016, when he did not seek certiorari in the United States Supreme Court. Pursuant to § 2244, Creel had one year from that date, or until Tuesday, February 21, 2017,[36] to timely file a federal application for habeas corpus relief, which he did not do. Thus, literal application of the statute would bar Creel's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

     A.     **Statutory Tolling**

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

---

[36]The last day of the period was Saturday, February 18, 2017. Monday, February 20, 2017, was Washington's Birthday, a federal and state legal holiday. La. Rev. Stat. Ann. § 1:55; Fed. R. Civ. P. 6(a)(6). This left the deadline to fall on the next business day, Tuesday, February 21, 2017. *See* La. Code Crim. P. art. 13; Fed. R. Civ. P. 6.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 214 (finding that a motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *See Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In Creel's case, the AEDPA filing period began to run on February 19, 2016, the day after his conviction was final under federal law. However, on that date, Creel already had pending a state application for post-conviction review which he submitted to the state trial court on February 5, 2016. That application remained pending until July 6, 2016, when Creel did not file for review of the state trial court's ruling in the Louisiana First Circuit. *See* La. App. R. 4-3 (giving a petitioner 30 days from the trial court's ruling to file a writ application in the state appellate court).

9

The one-year AEDPA filing period began to run on July 7, 2016, and continued to run uninterrupted for one year, until July 6, 2017, when it expired. Creel had no properly filed state application for post-conviction relief or other collateral review pending in the state courts during this time period. Creel submitted his next post-conviction application on September 14, 2017, almost ten (10) weeks after the AEDPA filing period expired. Creel is not entitled to renewal of the filing period or other tolling benefits for pleadings filed after the AEDPA one-year limitations period has already expired. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (a filing made after the expiration of the AEDPA one-year filing period does not renew or extend the AEDPA filing period or provide a petitioner any tolling benefits); *Higginbotham v. King*, 592 F. App'x 313, 314 (5th Cir. 2015) (same).

Creel's federal petition deemed filed under the mailbox rule on August 29, 2019, was filed two years and almost two months after the AEDPA filing period expired on July 6, 2017. His federal petition was not timely filed and should be dismissed with prejudice for that reason.

### B.   No Equitable Tolling

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Creel has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling to the § 2244(d) calculation.

As noted by the State, Creel attempts to show cause for equitable relief from his delay only as it applies to the state courts' decree that his 2017 state court application for post-conviction

relief sought untimely post-conviction review under La. Code Crim. P. art. 930.8. However, as calculated above, the AEDPA filing period expired on July 7, 2017, almost ten weeks before Creel's second (2017) application was filed in the state trial court on September 14, 2017. Any cause for his delay in seeking state court post-conviction review in 2017 is irrelevant to equitable tolling in this instance.

Furthermore, equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary circumstance outside of his control from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002); *see Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation omitted) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's seventeen-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that

State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period). In addition, in order to satisfy the extraordinary circumstance test, the petitioner must show that he has been pursuing his rights diligently. *Pace*, 544 U.S. at 418.

Creel has made no such showing in this case, and he is not entitled to equitable tolling of the one-year AEDPA limitations period. His federal petition was not timely filed and should be dismissed with prejudice for that reason.

### C. No Actual Innocence Exception

Creel does not directly assert his actual innocence of the crime although he at least argues that his mother, Myers, tried to recant her accusatory statements to profess that she accidently cut herself. The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" notwithstanding the "expiration of the statute of limitations" under the AEDPA. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id*. at 392, (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The Supreme Court, however, has cautioned that "[t]he miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Id*. at 394-95 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The Supreme Court has made clear that "habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare." *Schlup*, 513 U.S. at 321.

Thus, the Supreme Court construes the "actual innocence" doctrine narrowly. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992) (explaining that the actual innocence doctrine is "narrow" and typically "concerned with actual as compared to legal innocence"). The Court has held that the concept of actual innocence is different from the concept of legal innocence. *Id*. at 339-40; *Smith v. Murray*, 477 U.S. 527, 537 (1986). "In the context of a noncapital case, the concept of 'actual innocence' is easy to grasp," and means simply a "mistake" was made and "the State has convicted the wrong person of the crime." *Sawyer*, 505 U.S. at 341.

In applying the actual innocence doctrine, the United States Fifth Circuit Court of Appeals has held that evidence is "not 'new' [when] it was always within the reach of [petitioner's] personal knowledge or reasonable investigation." *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008); *Hancock v. Davis*, 906 F.3d 387, 389 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 2714 (2019) ("[e]vidence does not qualify as 'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of [petitioner's] personal knowledge or reasonable investigation.'") (quoting *Moore*, 534 F.3d at 465); *Joyner v. Kent*, No. 16-16595, 2019 WL 3753693, at *1 (E.D. La. Aug. 8, 2019) (Barbier, J.).

Creel has not presented any <u>new</u> or <u>reliable</u> evidence of his alleged actual innocence under these factors. It is widely known that recanting affidavits and witnesses are viewed with extreme suspicion by the courts. *See, e.g., Spence v. Johnson*, 80 F.3d 989, 1003 (5th Cir. 1996). To assess reliability, it is appropriate for a court to "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability" of the proffered new evidence. *Schlup*, 513 U.S. at 332. Those factors weigh against Creel in this case.

The purported affidavit from Myers is not properly or clearly dated, sworn, verified, or in authentic form.[37] The purported affidavit has an incomplete notary designation and "2/24/02-15" scribbled at the top of the first page. Assuming that to be February 24, 2015, that date was more than two years after Creel's trial in December 2013 and two months after his conviction was affirmed by the state appellate court in December 2014. The affidavit provides no reason why Myers waited to commit her statement to writing or explain why she voluntarily failed to appear at his trial to give her exculpatory statement on behalf of her son.

As noted by the state trial court, Myers gave an inculpatory statement to police which was consistent with the statements of the witness and other victim. Yet, Myers, even as a victim, failed to appear to testify at her son's trial, despite the subpoena and arrest warrant issued to compel her presence, where she could have testified to any change in her initial story. The affidavit is at best suspect without an indicium of reliability. *See Summers v. Dretke*, 431 F.3d 861, 872 (5th Cir. 2005) (finding no reason to disturb the finding of the state court when recanting affidavit stands alone, uncorroborated, and unsupported).

Creel also has presented no new evidence of his innocence. Creel's defense has consistently been that he lacked intent to harm his wife and his desire to have his mother testify to explain the accidental nature of the incident. This information was always within his grasp and is not new under the definitions above.

For these reasons, the information Creel may rely on to bypass the AEDPA statute of limitations is not new or reliable to invoke the rare actual innocence exception under *Schlup* or *McQuiggin*.

---

[37]St. Rec. Vol. 2 of 5, Myers's Purported Affidavit.

### D.     No Exception under *Martinez*

Although Creel's petition does not assert a claims of ineffective assistance of trial counsel, it is noteworthy that the United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013), do not provide a basis for review of his untimely filed federal petition or his ineffective assistance of trial counsel claims. In *Martinez*, the Supreme Court held that a state court imposed "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state court's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino*, 569 U.S. at 417 (quoting *Martinez*, 566 U.S. at 17) (emphasis added). Neither is at issue in this case.

Instead, the bar to review at issue here arises from Creel's failure to meet the <u>federal</u> limitations deadline under the AEDPA. The *Martinez* and *Trevino* decisions do <u>not</u> address or provide an excuse for the untimely filing of a federal habeas petition. *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report). The *Martinez* and *Trevino* opinions also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year filing period under the AEDPA. *See In re Paredes*, 587 F. App'x 805, 813 (5th Cir. 2014) (". . . the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012). Thus, neither *Martinez* nor *Trevino* provide Creel relief from the untimeliness of his federal petition.

## V.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Ricky Creel's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[38]

New Orleans, Louisiana, this  29th   day of April, 2020.

_____
KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[38]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.